In re THIRTY-NINTH STREET FERRY IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. April 12, 1912.)

1. LANDLORD AND TENANT (§ 157*)—IMPROVEMENTS BY TENANT—LANDLORD'S LIABILITY FOR COST—LIEN.

A ferry company leased property to a railroad for tracks on which its cars might stand for the convenience of the ferry passengers, and under the lease the railroad was to remove the ferry house and rebuild it adjoining the leased property, which it did at an expense of $83,000, and the ferry company agreed to maintain and run the ferry at the terminus built by the railroad, or, in default, to pay back to the railroad the money spent by it for the improvement. *Held*, that the railroad's right under the lease was not merely a claim against the ferry company for the amount expended, but an equitable interest in the property to the amount expended for improvements, for which a lien could be declared in equity.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 571, 572, 574-607; Dec. Dig. § 157.*]

2. EMINENT DOMAIN (§ 155*)—COMPENSATION—LEASEHOLD—INTEREST.

Where a city commenced proceedings to condemn all the property of a ferry company, and afterwards, with knowledge of the existence of a lease, its terms, and conditions, and the claim which the lessee railroad had against the ferry company for the cost of improvements made by it on the leased land, purchases all the ferry property except the railroad's leasehold, it will be presumed that in making payment to the ferry company a deduction was made from the purchase price, so that, in continuing the proceedings against the leased premises alone, the city was bound to pay the railroad the amount which the ferry company was bound to pay under the lease on discontinuance of the ferry.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 421-424; Dec. Dig. § 155.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Kings County.

Appeal by the City of New York in the matter of the application
of the City of New York relative to acquiring title, etc., to lands be-
tween Thirty-Eighth and Thirty-Ninth streets, etc., for ferry pur-
poses. Brooklyn Heights Railroad Company respondent. Order con-
firming report of commissioners affirmed.

See, also, 68 Misc. Rep. 509, 125 N. Y. Supp. 209.

The following is the opinion of Crane, J., at Special Term:

The difficulty which has arisen between the parties appears to be due to
the different way in which they view this proceeding. The City considers it
a proceeding merely to condemn a piece of property, 100 feet by 100 feet, or
the leasehold of that property, while the Railroad Company considers it a
proceeding to condemn the entire property of the Ferry Company, including
the portion 100 by 100, and the leasehold. The City considers that the lease
merely covered trackage on the strip 100 by 100, while the Railroad Com-
pany considers it a trackage lease in connection with and dependent upon an
adjoining ferry. The view taken by the Railroad Company I consider to be
the correct one.

[1, 2] The City commenced this proceeding to condemn all the property of
the Thirty-Ninth Street ferry, and succeeded in purchasing for $750,000 all
but the leasehold of the Railroad Company. If the matter had proceeded
in the usual course to a final determination, the property would have been
condemned in its entirety at the ascertained valuation, and as between the
Ferry Company and the Railroad Company there would have been awarded
to the Railroad Company out of this amount at least the $83,545.38 spent by
the Railroad Company in improving the property under and in accordance
with the terms of this lease. Instead of proceeding to a final determination
as to all of the property, the City purchased, pending the proceeding, all the
ferry's property, except the leasehold. At the time it knew of the existence
of the lease, its terms and conditions, and the claim which the Railroad Com-
pany had upon the property purchased. It must therefore be assumed that
in paying the Ferry Company allowances and deductions were made for
this claim. This proceeding was to obtain all of the property of the Ferry
Company, including the leasehold of the railroad, and must be viewed as
such, and not merely as a proceeding to take the piece 100 by 100, or the
rights therein.

The claims of the Railroad Company extended further under its lease than
to mere trackage privileges. From a mere reading of the lease, it is ap-
parent that the Ferry Company leased the property to the Railroad Company
in order that cars might stand, for the convenience of the ferry passengers
and to the profit of both companies, at and near the ferry house. To this
purpose the Railroad Company spent $83,545.38 in accordance with the lease
to remove the ferry house and rebuild it adjoining the leased property. Un-
less the ferry house was maintained as thus built by the Railroad Company
and passengers landed adjoining the property leased on which the cars
stood, the lease was valueless, and the Railroad Company's money was ex-
pended on a subterfuge. No construction can be given to this lease which
would permit the nullification of the intention of the parties. The leasing of
the plot on which the cars were to be stalled and the building of the ad-
joining ferry house by the railroad for the Ferry Company and the main-
tenance of the ferry were all part of one agreement. If the Ferry Company,
after accepting the improvements made by the Railroad Company under its
lease, should seek to terminate its ferry or dispose of its property without
paying back the money expended to the Railroad Company, a court of equity
would impress a lien upon the land at the instance and in behalf of the Rail-
road Company. The rights under the lease were not merely a claim against
the Ferry Company for the amount of money expended, but an equitable
interest in the property to the extent of the amount expended by the Rail-
road Company to improve it pursuant to the agreement. The City pur-
chased the Ferry Company's property with full knowledge of this equitable

interest, and should pay to the company the amount which the Ferry Company was bound to pay pursuant to the lease. The value of the lease is not merely the value of the right or privilege to store cars upon the strip 100 by 100. It is the value of this right in connection with the going ferry with the ferry house where the Railroad Company built it, together with the right of receiving $83,545.38 at the termination of the lease, or the doing of such acts as would amount to the termination of the lease. This sum expended by the Railroad Company which the lessor promised to pay back for the improvements made may be received as evidence of the value of the leasehold. When it is determined, as it must be, that by the terms of this lease the Ferry Company agreed to maintain and run the ferry at the place built upon for the benefit of the railroad, or, in default thereof, to pay back the money spent by the Railroad Company for the improvements, and that this agreement attached to and ran with the land upon which the Railroad Company expended this money, the result reached by the commissioners in their report compelling the City, the grantee of the Ferry Company, to pay back the $83,545.38, the minimum value of the lease now actually terminated by the removal of the ferry houses, must be approved and confirmed.

The report of the commissioners is confirmed.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and WOODWARD, JJ.

Archibald R. Watson, Corporation Counsel.
George D. Yeomans, for Brooklyn Heights R. Co.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of Mr. Justice Crane at Special Term.